884 F.2d 579
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant,
v.
LUCKMAR PLASTICS, INC., Defendant-Appellee.
 No. 88-2192.
 United States Court of Appeals, Sixth Circuit.
 Sept. 7, 1989.
 
 Before NATHANIEL R. JONES and MILBURN, Circuit Judges, and SAM H. BELL, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff, Equal Employment Opportunity Commission (EEOC), appeals the district court's order granting summary judgment for the defendant, LuckMarr Plastics, Inc. (LuckMarr), in this age discrimination action. For the following reasons, we affirm.
 
 I.
 
 2
 In October 1985, LuckMarr began taking applications for the position of a Quality Control Inspector (QCI), and in mid-October Issiah D. Patterson applied for the position. LuckMarr maintains that Patterson called LuckMarr and spoke to Tony J. Parker, who was responsible for hiring all QCI's. Parker claims that he described the job and told Patterson that the starting wage range was between $5.00-$6.00 per hour. Although Parker later stated that the range is between $5.00-$5.50 per hour, he asserts that his initial statement to Patterson was accurate because a QCI could eventually earn up to $6.00 per hour after wage increases.
 
 
 3
 Patterson contends that he never talked to Parker about the QCI's salary before he filled out his application at LuckMarr. Rather, Patterson states that when he arrived at LuckMarr, he spoke only to the receptionist. When Patterson filled out his application, he noted that his desired salary was for $15,000.00-$20,000.00 a year. Although Patterson was never given an interview, he claims that after he filled out the application, the receptionist told him that he would be contacted for an interview. LuckMarr maintains, and Patterson does not dispute, that the receptionist plays no role in hiring decisions at LuckMarr.
 
 
 4
 Patterson claims that he was not given an interview because he was 63 years old at the time of the application. Although Patterson did not list his age on his application, he claims that Parker could easily have determined his age because of his work history and because of his military service in World War II. On November 12, 1987, the EEOC sued LuckMarr alleging that LuckMarr violated the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. Sec. 621, et seq. (1982) (ADEA), when it refused to interview Patterson. The EEOC also made a claim, which it later dropped, based on Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000e, et seq. (1982).
 
 
 5
 LuckMarr alleged that Parker chose not to interview Patterson because Patterson's salary request was higher than the salary paid to QCI's. LuckMarr admitted that it hired eight QCI's during the relevant time periods involved in this dispute. However, LuckMarr maintains that, even though some of the applicants requested a salary of $6.00 per hour, none of the applicants (including those who already worked for LuckMarr) were paid more than $5.50 per hour. Although there is a dispute concerning the exact number of hours that QCI's worked each week, the record indicates that even if Patterson were paid $6.00 per hour and worked 45 hours each week, this salary ($14,820.00) would still be less than his minimum salary request. Patterson contends that but for his age Parker would have interviewed him and given him an opportunity to state that he would accept a lower salary. However, he never informed Parker that his salary request was negotiable and it unclear whether Parker ever conducted salary negotiations with applicants.
 
 
 6
 In an oral ruling on LuckMarr's motion for summary judgment, the United States District Court for the Eastern District of Michigan, Judge George Woods presiding, found that the EEOC had established a prima facie case of age discrimination because: there was sufficient evidence in Patterson's application to indicate his age; Patterson was qualified for the position; despite Patterson's qualifications, he was not interviewed or hired; and, LuckMarr hired persons younger than Patterson. However, the court then noted that "[e]ven the low end of Patterson's requested salary range was still somewhat higher than a QCI would earn including overtime, and overtime hours are not guaranteed or necessarily even predictable." J.App. at 612. Noting that "this is a close call," on September 30, 1988, the court granted summary judgment for LuckMarr because of its determination "that the EEOC has failed to sustain its burden of proving that excessive salary was a pretext for LuckMarr's failure to interview Patterson." Id. On October 27, 1988, LuckMarr filed a motion for attorneys' fees and costs, but, because the EEOC filed its notice of appeal to this court, the district court stayed its disposition of LuckMarr's application for attorneys' fees.
 
 II.
 
 7
 The EEOC's primary argument on appeal is that the district court erred in granting LuckMarr's motion for summary judgment because it resolved disputed issues of fact concerning Parker's motives for refusing to interview Patterson. If there are no genuine issues as to any material facts, a court should enter summary judgment on a claim because the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). This court has stated that "where a substantial issue of fact remains as to whether an employer's intent or motive was discriminatory ... summary judgment is precluded." Leonard v. Frankfort Elec. & Water Plant, 752 F.2d 189, 193 (6th Cir.1985). However, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" and if the disputed evidence "is merely colorable ... or is not significantly probative ... [then] summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2511 (1986) (citations omitted).
 
 
 8
 The ADEA makes it unlawful for any employer to refuse to hire or to discharge an employee because of age. In interpreting the ADEA, the Supreme Court has held that the "interpretation[s] of Title VII ... applies with equal force in the context of age discrimination" because the "substantive provisions of the ADEA 'were derived in haec verba from Title VII.' " Trans World Airlines, Inc. v. Thurston, 105 S.Ct. 613, 621 (1985) (quoting Lorillard v. Pons, 434 U.S. 575, 584 (1978)). Although this court has "refused to follow blindly the four-part McDonnell Douglas formula [of Title VII] in ADEA cases," and has instead "adopted a case-by-case approach" to establish a prima facie case of age discrimination, in general, plaintiffs must satisfy the criteria established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Simpson v. Midland Ross Corp., 823 F.2d 937, 940 (6th Cir.1987).
 
 
 9
 In order to satisfy the standards developed in McDonnell Douglas and Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981), Patterson must prove that: he belongs to a protected class; he applied for and was qualified for a position; despite his qualifications, he was not hired; and, the positions either remained open or were filled by younger persons. Viewing the evidence in Patterson's favor, we agree with the district court's finding that Patterson has established a prima facie case of age discrimination. Once LuckMarr stated that Patterson's salary request was the reason he was not given an interview, the burden shifted back to the EEOC to show by a preponderance of the evidence that LuckMarr's proffered reason was a pretext for discrimination. Although it is possible that Parker decided not to interview Patterson because of his age, the EEOC has failed to show by a preponderance of the evidence that LuckMarr's stated reason for not hiring Patterson is a pretext for age discrimination. Thus, since the EEOC's evidence is merely colorable, even though the district court resolved some factual disputes, we hold that the court properly granted summary judgment for LuckMarr.
 
 III.
 
 10
 LuckMarr argues that since the EEOC has not been "substantially justified" in its position throughout this litigation, it is entitled to attorneys' fees pursuant to the Equal Access to Justice Act, 28 U.S.C. Sec. 2412 (1982). While courts have varied on the definition of "substantially justified," the Supreme Court has found that substantially justified means " 'justified in substance or in the main'--that is, justified to a degree that could satisfy a reasonable person." Pierce v. Underwood, 108 S.Ct. 2541, 2550 (1988). See also United States v. Beebe, 835 F.2d 670, 671 (6th Cir.1987) (per curiam) ("Heretofore, we have construed 'substantially justified' as meaning that the [Government's] position must have a reasonable basis in law and fact.") Although the district court correctly granted summary judgment for LuckMarr, because the court resolved many disputed facts and stated its belief that this was a "close" case, the EEOC reasonably could have believed that the district court erred as a matter of law in granting summary judgment. Since LuckMarr's motion for attorneys' fees and costs is currently pending before the district court, the court may ultimately decide to grant LuckMarr's application for attorneys' fees. Upon reviewing the record before this court, however, we find that the EEOC's position was substantially justified and, accordingly, we deny LuckMarr's request for attorneys' fees.
 
 IV.
 
 11
 For the above stated reasons, the judgment of the district court is affirmed and LuckMarr's request for attorneys' fees is denied.
 
 
 
 *
 Honorable Sam H. Bell, United States District Judge for the Northern District of Ohio, sitting by designation