RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0271p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

GUYAN INTERNATIONAL, INC., dba PERMCO,
    *Plaintiff-Appellee* (11-3126),

Nos. 11-3126/3640

PRITCHARD MINING COMPANY, INC.;
HOCKING, ATHENS, PERRY COMMUNITY
ACTION AGENCY, on its own behalf and on
behalf of Hocking, Athens, Perry Community
Action Agency Employee Health Benefit
Plan; PRECISION GEAR, INC.; MERIT GEAR,
INC.,
    *Plaintiffs/Intervenors-Appellees* (11-3640),


        *v.*


PROFESSIONAL BENEFITS ADMINISTRATORS,
INC.,
    *Defendant-Appellant* (11-3126 & 11-3640),

ROBERT HARTENSTEIN,
        *Defendant-Appellant* (11-3126),
                *Defendant* (11-3640).

Appeal from the United States District Court
for the Northern District of Ohio at Akron.
No. 5:10-cv-823—David D. Dowd, Jr., District Judge.

Decided and Filed:  August 20, 2012

Before:  WHITE, STRANCH, and FARRIS, Circuit Judges.[*]

_____

## COUNSEL

**ON BRIEF:** Steven G. Janik, Crystal L. Nicosia, Colin P. Sammon, Ellyn Mehendale,
JANIK LLP, Cleveland, Ohio, for Appellants.  Peter Turner, MEYERS, ROMAN,
FRIEDBERG & LEWIS, Cleveland, Ohio, for Appellee in 11-3126.  Carl H. Gluek,

_____
[*]The Honorable Jerome Farris, Senior Circuit Judge of the United States Court of Appeals for the
Ninth Circuit, sitting by designation.

1

Jennifer L. Whitney, Olivia Lin, FRANTZ WARD LLP, Cleveland, Ohio, for Appellees in 11-3640.

———————————

**OPINION**

———————————

JANE B. STRANCH, Circuit Judge.  This appeal turns on whether Professional Benefits Administrator (PBA) is a fiduciary under the Employee Retirement Income Security Act of 1974 (ERISA) with respect to Plaintiffs' employee benefit plans. Plaintiffs each established and administered an employee benefit plan (Plan; collectively, Plans) that provided health benefits for their employees under ERISA.  Plaintiffs hired PBA as a claims administrator to pay medical providers for claims incurred under the Plans.

Although PBA was contractually obligated to use the funds it received from Plaintiffs solely to pay these claims, PBA instead used the funds for its own purposes, causing hundreds of thousands of dollars worth of claims to go unpaid.  Plaintiffs sued PBA for, among other things, breaching its fiduciary duties under ERISA and breaching its contracts with Plaintiffs under state law.  The  district court granted partial summary judgment and awarded damages to Plaintiffs on behalf of the Plans.  PBA argues on appeal that it is not a fiduciary under ERISA, that Plaintiffs have not been damaged by any breach, and that Plaintiffs' breach-of-contract claims are preempted by ERISA.  For the reasons set forth below, we AFFIRM the judgment of the district court.

**I. BACKGROUND**

Permco, Precision Gear, Pritchard, and HAPCA (collectively, Plaintiffs) each established an employee benefit plan under ERISA funded by a combination of employer contributions and covered employee payroll deductions.  And each Plaintiff entered into a Benefit Management Service Agreement (the Agreement) with PBA, which specified that PBA would provide various services for the Plans.

Among other things, PBA agreed to pay medical providers for claims incurred under the Plans.[1] Each Agreement (1) required PBA to establish a segregated bank account for each Plan into which it would deposit the funds that it received from the corresponding Plaintiff for paying the medical claims and (2) authorized PBA to pay medical claims by writing checks from this account. Because these funds were to be used solely to pay claims under the Plans, PBA agreed that it (1) would not commingle the funds for each Plan with PBA's own assets and (2) would not use these funds for its own purposes.

Despite these promises, PBA not only failed to use funds supplied by Plaintiffs to pay the claims incurred under the corresponding Plan, but it commingled and misappropriated those Plan funds for its own purposes. When PBA received too many complaints from medical providers or Plan participants, PBA would withdraw funds from its main, commingled account and put that money into the respective Plaintiff's separate account to pay the claim(s) in question.

But PBA did not pay all of the claims, despite receiving money for payment of those claims from the respective Plaintiffs. The amounts that each Plaintiff paid to PBA to fund claims that PBA did not pay are $501,380.75 for Permco; $409,943.88 for Pritchard; $384,574.17 for HAPCA; and $44,290.12 for Precision Gear. When PBA received Plan funds from Plaintiffs and deposited them into an account of its choice, PBA exercised control over those Plan funds, as demonstrated by PBA's use of Plan funds for its own purposes and its failure to pay all the medical claims.

In April 2010, Permco sued PBA and others for injunctive relief, damages, and an accounting. Briefing on a partial summary-judgment motion was completed by December 2010. In January 2011, the district court found that PBA was a fiduciary under ERISA, that PBA had breached its fiduciary duties, that Permco and its Plan had been damaged by this breach, and that ERISA preempted Permco's breach-of-contract claims. It granted partial summary judgment on the breach-of-fiduciary-duty claim under ERISA and awarded Permco $501,380.75 on behalf of the Plan.

---

[1]In relevant respects, the Agreement that each Plaintiff entered into with PBA is materially identical.

Meanwhile, Pritchard intervened and filed a complaint against PBA in June 2010; HAPCA, in November 2010; and Precision Gear, in November 2010. Each of the intervening Plaintiffs filed motions for partial summary judgment, and the briefing on these motions was completed in April 2011. The district court similarly granted partial summary judgment to these intervening Plaintiffs on their breach-of-fiduciary-duty claim under ERISA and awarded them monetary damages equal to the amount of claims that PBA had not paid. PBA timely appealed the partial judgments that the court awarded to the Plaintiffs.

## II. ANALYSIS

### A.     Standard of review

We review a district court's grant of summary judgment de novo. *Carter v. Univ. of Toledo*, 349 F.3d 269, (6th Cir. 2003). Summary judgment is proper if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Courts consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The ultimate question is "whether the evidence presents a sufficient disagreement to require submission to a jury [i.e., factfinder] or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

### B.     Fiduciary status and liability under ERISA

The first issue is whether the district court correctly ruled that PBA was a fiduciary under ERISA when it managed or disposed of plan assets. Whether an entity is a fiduciary under ERISA is reviewed de novo. *Briscoe v. Fine*, 444 F.3d 478, 486 (6th Cir. 2006).

In relevant part, ERISA provides that "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises *any* authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A) (emphasis added).

The term *person* is defined broadly to include a corporation such as PBA. *Id.* § 1002(9). Because "fiduciary status is not an all or nothing concept," the relevant question is whether an entity "is a fiduciary with respect to the particular activity in question." *Briscoe*, 444 F.3d at 486 (brackets, ellipses, and internal quotation marks omitted).

Based on the second *or* clause in subsection (i) of § 1002(21)(A)'s definition of a fiduciary, *Briscoe* reasoned that although an entity must exercise *discretionary* control over managing a plan in order for that entity to become a fiduciary, an entity that exercises *any* authority or control over disposition of a plan's assets becomes a fiduciary. *Id.* at 490-91. So the threshold for becoming a fiduciary is lower for entities handling plan assets than for entities managing the plan. *Id.* at 491. An entity such as a third-party administrator becomes an ERISA fiduciary when it exercises "practical control over an ERISA plan's money." *Id.* at 494. Because the third-party administrator in *Briscoe* "had the power to write checks on the plan account . . . and exercised that power," it was "an ERISA fiduciary to the extent that it did so." *Id.*

In light of these principles, PBA was a fiduciary under ERISA because it exercised authority or control over Plan assets. PBA had the authority to write checks on the Plan account and exercised that authority. Moreover, PBA had control over where Plan funds were deposited and how and when they were disbursed. PBA commingled Plan assets by depositing these funds into its general account rather than into the Plaintiffs' separate accounts as the Agreement required. And then PBA used these Plan funds for its own purposes, again contrary to the dictates of the Agreement. The fact that PBA used Plan funds in ways contrary to how it had agreed to use them demonstrates that PBA had practical control over Plan funds once it received them from the Plaintiffs.

PBA's arguments to the contrary are not persuasive. First, PBA ignores the fact that discretionary authority or control over plan assets is not required to become a fiduciary. PBA merely has to exercise *any* authority or control over plan assets, which it manifestly did. Second, PBA seeks to shield itself from fiduciary liability by pointing to portions of its agreements that expressly state that it is not a fiduciary. But *Briscoe*

specifically reasoned that language in a contract purporting to limit fiduciary status does not "override[] [a third-party administrator's] functional status as a fiduciary." *Briscoe*, 444 F.3d at 492.

Finally, PBA posits that extending fiduciary status to any entity that exercises *any* authority or control over plan funds would extend fiduciary status beyond what Congress intended. But that argument ignores the clear language Congress selected. Because the plain language of ERISA confers fiduciary status on any entity that exercises *any* authority or control over plan funds, *Briscoe*'s interpretation of the statute is more faithful to the words in the statute and the intent they evidence. And PBA's parade of horribles—in which a bank that merely holds deposited funds becomes a fiduciary under ERISA—is a false path. *Briscoe* expressly stated that its interpretation of *fiduciary* under ERISA would not include entities that "exercise[] mere possession or custody over the plans' assets." *Briscoe*, 444 F.3d at 494 (internal quotation marks omitted). A bank that merely holds deposits simply has possession or custody of the plan's assets, which is not sufficient for fiduciary status.

Having determined that PBA was a fiduciary under ERISA, we easily conclude that PBA breached its fiduciary duty. ERISA requires fiduciaries to act "solely in the interest of the [Plan] participants and beneficiaries." 29 U.S.C. § 1104(a)(1). Moreover, ERISA prohibits a fiduciary from "deal[ing] with the assets of the plan in his own interest or for his own account." *Id.* § 1106(b)(1). PBA blatantly violated these statutory commands by using Plan assets—money from the employers and the covered employees—for its own purposes. This led to hundreds of thousands of dollars of unpaid claims and the concomitant harm to Plan participants, including collection actions and denials of medical service. This is a classic case of self-dealing. That such conduct is indefensible is evidenced by PBA's failure to challenge the district court's finding of breach of fiduciary duty under 29 U.S.C. § 1109(a).

## C.      Damages

On appeal, PBA raises two arguments relating to damages: (1) Plaintiffs have no claim for relief under 29 U.S.C. §§ 1109(a) and 1132(a)(2) because they seek to recover for themselves as individual entities rather than on behalf of each Plaintiff's respective Plan, and (2) Permco, Precision Gear, and HAPCA were not damaged when PBA breached its fiduciary duty by failing to pay medical providers because these plaintiffs did not then advance additional money to pay the providers. These arguments are without merit. We address each in turn.

A threshold question exists as to whether PBA forfeited its first argument by not raising it before the district court. If a party fails to raise an issue to the district court, then that party "forfeits the right to have the argument addressed on appeal." *Armstrong v. City of Melvindale*, 432 F.3d 695, 699-700 (6th Cir. 2006). The well-settled rule is that "this court's function is to review the case presented to the district court, rather than a better case fashioned after an unfavorable order." *Id.* at 700 (brackets, ellipses, and internal quotation marks omitted). On the issue of damages, PBA raised below only the second argument and only as to Permco, Precision Gear, and HAPCA.[2] PBA did not argue below that Plaintiffs have no claim for legal relief under §§ 1109(a) and 1132(a)(2) because they seek recovery for themselves rather than on behalf of each Plaintiff's respective Plan. PBA has forfeited this argument on appeal.

Concluding that PBA has forfeited the argument is buttressed by PBA's own statements in its briefs in opposition to Plaintiffs' summary-judgment motions, in which PBA essentially concedes that Plaintiffs seek recovery on behalf of each Plaintiff's respective Plan. PBA admitted that Pritchard, Precision Gear, and HAPCA "seek[] to recover Plan funds purportedly lost as a result of PBA's alleged breach."[3] And PBA used even stronger language when characterizing Permco's fiduciary-breach claim under

---

[2]PBA made no argument on the issue of damages with respect to Pritchard.

[3]It is immaterial that this statement occurs in the context of PBA discussing these Plaintiffs' breach-of-contract claims under state law because these claims arise from the same operative facts as the breach-of-fiduciary-duty claims under ERISA.

ERISA: "In this case, Permco seeks damages from PBA pursuant to 29 U.S.C. § 1109(a), contending that *PBA is liable to the Plan* to make it whole."  (Emphasis added.)  PBA should not now be allowed to argue on appeal the exact opposite of what it stated in its briefs below.[4]

Moreover, even the merits of PBA's argument are unpersuasive because Plaintiffs' complaints and summary-judgment briefs demonstrate that they are seeking recovery on behalf of each Plaintiff's respective Plan.  Section 1132(a)(2) authorizes four classes of party—the Secretary of Labor, participants, beneficiaries, or fiduciaries like Plaintiffs—to bring a civil suit for the relief specified in § 1109(a).  That section, in turn, makes a fiduciary who breaches a fiduciary duty "personally liable to make good to such plan any losses to the plan resulting from each such breach."  The Supreme Court interpreted this section as authorizing one of the four types of party to bring an action for breach of fiduciary duty in a representative capacity to seek recovery on behalf of the plan.  *Russell*, 473 U.S. at 142, 142 n.9; *id.* at 154 (Brennan, J., concurring).  In *Tullis*, this court held that the requirement under § 1109(a) that a breach-of-fiduciary suit seek recovery on behalf of a plan was satisfied even though the plaintiffs "did not specifically allege in their complaint that their plan suffered losses; rather, the plaintiffs repeatedly allege that they, as individuals, 'suffered damages.'"  515 F.3d at 680.  The reasoning is instructive:

> Although the face of the complaint does not include the exact words "losses to the plan" (*i.e.* that the plan suffered damages), it clearly indicates that the plaintiffs, as participants in an ERISA-governed plan, are seeking recovery for losses to their plan accounts caused by fiduciary

---

[4]Pritchard argues that forfeiture is not an issue because it views whether plaintiffs seek recovery for themselves or on behalf of a plan as a question of standing, which can be raised at any time, *see Scotty's Contracting and Stone, Inc. v. United States*, 326 F.3d 785, 787 (6th Cir. 2003).  But authority is split over whether it is a question of standing—i.e., does the suit's validity turn on who is suing—or a question of whether a cause of action exists, which depends on the relief one sues for, not on who is suing. *Compare Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134 (1985) (holding that 29 U.S.C. § 1109(a) does not create a cause of action for extra-contractual damages caused by a fiduciary breach, and reasoning that § 1109(a) only allows causes of action where the relief sought is on behalf of the plan), *and Pfahler v. National Latex Products Co.*, 517 F.3d 816, 825-26 (6th Cir. 2007) (holding that a suit for fiduciary breach is a valid claim if the plaintiff "seek[s] to recover on behalf of the plan"), *with Loren v. Blue Cross & Blue Shield of Michigan*, 505 F.3d 598, 608-09 (6th Cir. 2007) (viewing the question as one of standing), *and Tullis v. UMB Bank*, 515 F.3d 673, 675 (6th Cir. 2008) (same).  We conclude the better answer is that this is not a question of standing because *Russell*, of which the other cases are progeny, does not treat the issue as one of standing.

breaches. . . . Moreover, the complaint clearly puts the defendant on notice that the plaintiffs are seeking recovery for losses that occurred to their plans. That the plaintiffs are seeking recovery on behalf of their plans is, therefore, implied by the language of the complaint—to wit, that the value of the ERISA plans diminished because of the defendant's actions. To hold otherwise would elevate form over substance, a result we have rejected in other contexts.

*Id.* at 681 (internal citation omitted).

Plaintiffs' complaints and summary-judgment briefs are more than sufficient in light of *Tullis* to demonstrate that Plaintiffs' actions seek recovery on behalf of each Plaintiff's respective Plan. Plaintiffs expressly state in these pleadings that they bring this action on behalf of each Plaintiff's respective Plan. And Plaintiffs allege harm to the Plans themselves and the Plan participants, some of whom have been refused medical care and received collection notices, all because PBA diverted Plan funds for its own use rather than pay the claims as it promised. Specifically, Permco argued that its "Plan was damaged as a result of PBA's . . . conduct" and that PBA "is liable to the plan to make it whole for losses resulting from [that] breach." Precision Gear similarly argued that because "PBA . . . breached its fiduciary duties toward the Plan and its participants . . . [, it] is liable to the plan to make it whole for losses resulting from [that] breach." HAPCA alleged that as a "result of PBA's breach of fiduciary duty, HAPCA and the Plan have been damaged and are entitled to money damages." At summary judgment, HAPCA argued that PBA's breach had "damaged HAPCA and the Plan in the amount of $384,574.17." Pritchard similarly argued that as a result of PBA's breach of fiduciary duty, "Pritchard and the Pritchard Plan have been damaged and are entitled to money damages" in the amount of almost $410,000. These documents establish, and put PBA on notice, that Plaintiffs are seeking to recover for losses that occurred to the Plans when PBA failed to pay medical providers and instead used the funds for its own purposes.

PBA tries to undercut this conclusion by seizing on the fact that the district court's judgment awarded money damages to Plaintiffs themselves. But this fact is immaterial. The complaints and summary-judgment briefs make clear that Plaintiffs sought recovery on behalf of each Plaintiff's respective Plan. Viewing the damage

awards in that context, the relief obtained by Plaintiffs—who are the Plan administrators—is on behalf of the Plans.

PBA's second argument, unadorned with precedent, is that Permco, Precision Gear, and HAPCA were not damaged when PBA breached its fiduciary duty by failing to pay medical providers because these Plaintiffs did not then advance additional money to pay the providers. This argument is wholly meritless. PBA concedes that Plaintiffs provided PBA with money that PBA was required to use to pay medical providers, but that PBA used these Plan funds for its own purposes. Nothing in our precedent, or in logic, suggests that Plaintiffs must spend additional money to pay those still unpaid providers in order for Plaintiffs to establish damages. The damages occurred when PBA used the Plan funds for its own purposes because at that time the funds became unavailable to satisfy the purposes of the Plans.

## D.    Preemption

The final issue is whether Plaintiffs' breach-of-contract claims are preempted by ERISA. Whether ERISA preempts a state-law claim is reviewed de novo. *Briscoe*, 444 F.3d at 496.

ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). We have interpreted this as providing that "ERISA preempts state laws that (1) mandate employee benefit structures or their administration; (2) provide alternate enforcement mechanisms; or (3) bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself." *Penny/Ohlmann/Nieman, Inc. v. Miami Calley Pension Corp.*, 399 F.3d 692, 698 (6th Cir. 2005) (hereafter, *PONI*) (internal quotation marks omitted). *Briscoe* reasoned that the Supreme Court shed light on the scope of the second category when it held that

> "the preemptive force" of ERISA's remedial scheme was not "limited to
> the situation in which a state cause of action precisely duplicates a cause
> of action under [29 U.S.C. § 1132(a)]." [*Aetna Health, Inc. v. Davila*,
> 542 U.S. 200, 216 (2004)]. Rather, the Court said, "any state-law cause

of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Id.* at 209.

*Briscoe*, 444 F.3d at 49.

Plaintiffs concede that if PBA is a fiduciary under ERISA, then ERISA preempts the breach-of-contract claims they asserted under state law. Conceding this is correct because the breach-of-contract and breach-of-fiduciary-duty claims provide a remedy for the same conduct—namely, PBA's use of Plan funds for its own purposes rather than for paying medical providers. The state-law claim therefore fits within the second category of state laws preempted by ERISA because it provides an alternative to the enforcement mechanism provided in § 1132(a)(2) for breach of a fiduciary duty. *See PONI*, 399 F.3d at 698. Since PBA is a fiduciary under ERISA, the enforcement mechanism in § 1132(a)(2) applies and Plaintiffs' breach-of-contract claims are preempted.

### III. CONCLUSION

For all of the reasons set forth above, we AFFIRM the judgment of the district court.